## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

JOSÉ LUIS ROLDÓN-BARRIOS,

    *Plaintiff,*

  v.

UNITED STATES OF AMERICA,

    *Defendant.*

CIVIL NO. 19-1334 (DRD)

### OPINION AND ORDER

Pending before the Court is defendant, United States of America's *Motion for Summary Judgment* (Docket Nos. 47-49). A *Response in Opposition* was filed by Plaintiff, José Luis Roldón-Barrios. *See* Docket No. 65. A *Reply* was filed by the United States shortly thereafter. *See* Docket No. 71.

For the reasons stated herein, the Court **GRANTS** the United States' *Motion for Summary Judgment* (Docket No. 47).

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is a Federal Tort Claims Act (hereinafter, "FTCA") and Emergency Medical Treatment and Active Labor Act (hereinafter "EMTALA") lawsuit against the Department of Veterans Affairs. Plaintiff also seeks redress pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code by way of supplemental jurisdiction. *See* P.R. Laws Ann. Tit. §§ 5141-42. Essentially, Plaintiff seeks to recover damages stemming from an alleged medical malpractice in connection with an orthopedic surgery in his tibia that took place in 1995 at the VA Caribbean Healthcare System (hereinafter, "VA"). *See* Docket No. 16. According to Roldón, during the

next few years he has been treated for recurrent infections (cellulitis) and rash. *See Amend. Comp.*, Docket No. 16, ¶ 17.

In 2014, he alleges to have developed a skin condition that spread through his entire body "consisting of pus blisters, rash, and extreme itching. He attributed it to his use of cleaning wipes." *Amend. Comp.*, ¶ 18. He was treated for this condition at the Veterans Administration Mayaguez Clinic and at the San Juan VA Medical Center. *See id.* Subsequently, in 2017, Roldón claims to have had infections of five (5) types of bacteria. *See Amend. Comp.*, ¶ 19. In 2018, Plaintiff visited the San Juan VA Medical Center for follow-up treatment with an infection diseases specialist. There, he was allegedly informed for the first time that "he suffered all the recurrent infections including the serious skin condition develop[ed] in 2014 as a direct result of the infections including the serious skin condition develop[ed] in 2017 as a direct result of the infection acquired on his surgery of his right leg in 1995." *Amend Comp.*, ¶ 20.

According to the *Amended Complaint*, on April 23, 2018, Roldón filed a veteran's supplemental claim for compensation. *Amend. Comp.*, ¶ 23. A claim under the FTCA was filed before the Department of Veterans Affairs on August 8, 2018. The claim was denied as time-barred and a *Notice of Right to Sue* was issued on October 16, 2018, received on October 18, 2018. *See id.*

Now, the United States of America moves for summary judgment essentially arguing that "Plaintiff's sole claim for medical malpractice is time-barred and he lacks expert testimony to establish a prima facie case of negligence." Docket No. 47. In turn, Plaintiff argues that his claims did not accrue in November 1995 but "when he was informed at the VA clinic of the alleged wrongdoing . . ." *Response in Opposition*, Docket No. 65, ¶ 8. Likewise, Roldón argues that he has admissible expert testimony, and as such, can prove negligence. *Id.*, ¶ 12.

2

As Plaintiff has conceded that the United States is the only proper Defendant under the FTCA and that there is no cause of action against the United States under EMTALA, these matters are hereby dismissed. The Court need proceed no further.

## II.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *See* Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citing Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Liberty Lobby, Inc., 477 U.S. at 255 (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." Sands v. Ridefilm Corp., 212 F.3d 657, 660–661 (1st Cir. 2000) (citing Liberty Lobby, Inc., 477 U.S. at 247–248); Prescott, 538 F.3d at 40 (1st Cir. 2008) (citing Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997) (citing the advisory committee note to the 1963 Amendment to Fed. R. Civ. P. 56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. <u>Shalala</u>, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The <u>non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations</u>," but rather through definite and competent evidence. <u>Maldonado–Denis v. Castillo Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994) (emphasis ours). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990); *see also* <u>Suarez v. Pueblo Int'l.</u>, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." <u>Liberty Lobby, Inc.</u>, 477 U.S. at 247–248. Similarly, <u>summary judgment is appropriate</u> where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and <u>unsupported speculation</u>." <u>Ayala–Gerena v. Bristol Myers–Squibb Co.</u>, 95 F.3d 86, 95 (1st Cir. 1996); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (emphasis ours).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." <u>Smith v. Jenkins</u>, 732 F.3d 51, 76 (1st Cir. 2013)

(reiterating <u>Shafmaster v. United States</u>, 707 F.3d 130, 135 (1st Cir. 2013)). The Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (2000); <u>Liberty Lobby, Inc.</u>, 477 U.S. at 255; *see also* <u>Pina v. Children's Place</u>, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Reeves</u>, 530 U.S. at 150 (quoting <u>Anderson</u>, 477 U.S. at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact **and the movant is entitled to judgment as a matter of law.**" (Emphasis provided). *See* Fed. R. Civ. P. 56(a).

Hence, in order to prevail, Defendant must demonstrate that, even admitting well-pleaded allegations in light most favorable to Plaintiff, the applicable law compels a judgment in its favor.

### III.    FACTUAL FINDINGS

The following factual findings are taken from the United States' statement of undisputed facts, and supported documentation. Upon careful review of the record, and considering that Plaintiff has admitted all material facts[1], the Court finds the following facts are undisputed:

1. Plaintiff is José L. Roldán-Barrios. *See Declaration of Release of Information Officer*, Docket No. 50-1, ¶ 1[2].

---

[1] The major drawback on Plaintiff's failure to properly answer the United States' *Statement of Material Facts* (Docket No. 50) is that "statement of material facts . . . shall be deemed admitted," but only "if supported by record citations" as required by Local Rule 56. Not properly answering and/or opposing a summary judgment request under Local Rule 56(c) is "at their own peril." *See* Local Rule 56(c) and (e); *see also* <u>Morales v. A.C. Orssleff's EFTF</u>, 246 F.3d 32, 33 (1st Cir. 2001).
[2] The *Amended Complaint* refers to Plaintiff as José L. Roldón-Barrios. See *Amend. Comp.* ¶ 3. However, the medical records identify the Plaintiff as José Roldán (with an "a" instead of an "o"). *See e.g.*, *Relevant Medical Records*, Docket No. 50-2, pp. 2, 20.

***January 25, 1995 - Rod Fixation Surgery***

2.  On January 25, 1995, Plaintiff had surgery at the VA to fix a fracture in the tibia and fibula on his right leg. *See Amend. Comp.*, ¶ 11.; Docket No. 50-2, pp. 2-3. The surgery consisted of inserting an intramedullary rod and nail in the right leg. *Id.*, pp. 3-4.

3.  Plaintiff was discharged without incident three (3) days later, on January 28, 1995. *See id.*, pp. 5-6.

***September 28, 1995 – Rod Removal Surgery***

4.  On September 26, 1995, Plaintiff went to the emergency room at the VA complaining of fever and pain, redness, and hotness on his right knee and leg after having suffered a right ankle sprain four days before. *See id.*, p. 7.

5.  That same day, Plaintiff was diagnosed with cellulitis on his right leg and was given antibiotics. *See id.*, p. 8.

6.  The next day, on September 27, 1995, the progress notes indicate that Plaintiff had an infected right tibial intramedullary nail, and he will be taken to the operating room the next day for surgery to remove the nail. *See id.*, p. 9.

7.  On September 28, 1995, Plaintiff underwent a second surgery to remove the intramedullary rod and infected nail from the tibia on the right leg and drain an abscess on the right ankle. *See id.*, pp. 10-11.

8.  Plaintiff tolerated the procedure without complications. *See id.*, p. 11.

***November 1995 – Infection and Cellulitis***

9.  On November 17, 1995, Plaintiff arrived at the VA complaining of fever and redness and warmth of the right leg for the past two days. *See id.*, pp. 12-17.

10. That day, Plaintiff was admitted to the orthopedic ward of VA and diagnosed with cellulitis on his right leg. *See id.*, pp. 18-20.

11. Plaintiff was given antibiotics and underwent a WBC Indium scan that resulted negative for bone infection. *See id.*, p. 19-21.

12. Plaintiff was discharged on December 2, 1995. *See id.*, p. 18.

***Recurrent infections from 2004 to 2017***

13. On March 19, 2004, Plaintiff visited the emergency room at the VA with cellulitis on his right leg. *See Relevant Medical Records Re: Recurrent Infections*, Docket 50-3, Exhibit A, p. 927.

14. On November 24, 2006, Plaintiff again visited the emergency room at the VA with cellulitis on his right leg and was given medication. *See id.* Exhibit B, pp. 713-16.

15. On April 13, 2012, Plaintiff visited the VA complaining of pain and cellulitis on his right leg and was given medication. *See id.* Exhibit C, pp. 525, 527-29.

16. On August 5, 2013, Plaintiff visited the emergency room at the VA complaining of redness on his right leg and was diagnosed with cellulitis. *See id.*, Exhibit D, pp. 463-65.

17. On February 14, 2014, Plaintiff visited the emergency room at the VA complaining of right leg redness. He was diagnosed with cellulitis and given medications. *See id.*, Exhibit E, pp. 440-41.

18. On October 26, 2014, Roldón visited the emergency room at the VA complaining of a skin rash. A culture revealed he had a skin MRSA infection, and he was given medication. *See id.*, Exhibit F, pp. 393-94.

19. On December 30, 2015, Plaintiff visited the VA complaining of right leg tenderness and hotness. He was diagnosed with cellulitis and given medications. *See id.*, Exhibit G, pp. 297-98.

20. On December 14, 2017, Plaintiff visited the VA facility in Mayaguez where he was diagnosed with cellulitis on his right lower leg and was prescribed antibiotics. *See id.*, Exhibit H, pp. 142, 145.

21. On December 21, 2017, Plaintiff was seen by an outside infectious disease specialist. The specialist prescribed Plaintiff medication to treat recurrent infections and noted that there is no suggestion of osteomyelitis that could have been connected to previously infected hardware on right leg. *See id.*, Exhibit I, pp. 138-39.

22. On March 19, 2018, Plaintiff visited the VA facility in Mayagüez complaining of right leg redness. He was diagnosed with cellulitis on the right lower leg and was prescribed medication. *See id.*, Exhibit J, pp. 120-21.

23. On July 18, 2018, Plaintiff visited the VA facility in Mayagüez complaining of recurrent right lower leg cellulitis and was prescribed antibiotics. *See id.*, Exhibit K, pp. 93-97.

*August 8, 2018 – Administrative Claim*

24. On August 8, 2018, Plaintiff filed an administrative claim under the FTCA with the VA seeking $3.6 million in personal injury damages for alleged medical malpractice in connection with the intramedullary rod fixation and removal surgeries performed in 1995 which allegedly caused recurrent cellulitis. *See Declaration of Karen L. Rivera-Lebrón*, Docket No. 50-4 and   50-5.

25. On October 16, 2018, the VA denied Plaintiff's administrative claim on the basis that it was time-barred because Plaintiff's claim was filed more than 2 years after the claim accrued. *See* Docket No. 50-6.

26. Plaintiff filed the instant *Complaint* on April 19, 2019. *See* Docket No. 1.

27. An *Amended Complaint* was filed on June 3, 2020, becoming the operative complaint. *See* Docket No. 16.

***Post-Complaint MRI and CT Scan***

28. On February 15, 2020, Plaintiff had an MRI of his right knee. *See Dr. José Luis Quintero-Delgado's Deposition*, Docket No. 50-7[3], p. 2.

29. The February 15, 2020, MRI revealed an "old healed vertical tibial plateau fracture" and "[s]mall metallic artifacts within the proximal tibia epiphysis and metaphysis as well as in the soft tissues of the anterior knee[] from previous surgery or posttraumatic." *See id.*, p. 5.

30. On April 1, 2022, Plaintiff had a CT scan of his right knee. *See id.*, pp. 3 and 6.

31. The CT scan revealed: "no acute displaced fracture or dislocation is observed" and "small metallic densities noted throughout this region probably associated to postsurgical changes." *See id.*, pp. 6-7.

## IV.   LEGAL ANALYSIS

### A.  *Timeliness of Plaintiff's Medical Malpractice Action*

Pursuant to the FTCA, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

---

[3] For purposes of clarity, the page number that is being used as reference to Docket No. 50-7 pertains to the number assigned by the CM/ECF filing system.

28 U.S.C. § 2401. For limitations purposes, "[a]n FTCA claim generally accrues at the time of the injury." Donahue v. United States, 634 F.3d 615, 623 (1st Cir. 2011); *see* González v. United States, 284 F.3d 281, 288 (1st Cir. 2002). "Because the FTCA is a waiver of sovereign immunity, it is strictly construed." McIntyre v. United States, 367 F.3d 38, 51 (1st Cir. 2004); *see* Skwira v. United States, 344 F.3d 64, 73 (1st Cir.2003). Importantly, "[i]f Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S. Ct. 582, 584, 90 L. Ed. 743 (1946).

However, the discovery rule applies in instances in which the injury itself or who caused it is not readily apparent. Specifically, under the discovery rule, "a medical malpractice claim does not accrue until a plaintiff is aware of his injury and its cause . . ." United States v. Kubrick, 444 U.S. 111, 111, 100 S. Ct. 352, 354, 62 L. Ed. 2d 259 (1979). "Once aware of the probable cause and existence of the injury, that putative medical malpractice plaintiff bears the burden of seeking further advice from the medical and legal communities to decide whether he has a viable cause of action." Morales-Melecio v. United States (Dep't of Health & Hum. Servs.), 890 F.3d 361, 368 (1st Cir. 2018).

Importantly, "definitive knowledge of the cause of injury is not required to trigger the accrual of a medical malpractice claim . . ." Skwira v. United States, 344 F.3d 64, 78 (1st Cir. 2003). The First Circuit has clarified that "a plaintiff need not know the 'full extent of the injury,' . . . 'or that it was negligently inflicted' in order for the statute of limitations to begin to run." Morales-Melecio, 890 F.3d at 369 (internal citations omitted). As such, "[c]ertainty is not required for a claim to accrue." Callahan v. United States, 426 F.3d 444, 454 (1st Cir. 2005). In a nutshell, "the knowledge which triggers accrual (and hence the running of the statute of

10

limitations) is the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding if there is a basis for filing an administrative claim against the government . . ." <u>Skwira</u>, 344 F.3d at 78.

Here, it is undisputed that Plaintiff's administrative claim was filed on August 8, 2018. *See Fact. Find.* ¶ 24. In order for this claim to be timely, it must have occurred not earlier than August 8, 2016. Plaintiff's argument of a timely filing of the administrative claim inevitably fails. The Court explains.

### A. *Plaintiff's Claim Accrual Date*

The following determinative factors are undisputed. On January 25, 1995, Plaintiff had surgery at the VA to fix a fracture in the tibia and fibula on his right leg. *See Fact Find.* ¶ 2. The surgery consisted of inserting an intramedullary rod and nail in the right leg. *See Fact. Find.* ¶ 3. On September 26, 1995, Roldón visited the VA emergency room complaining of fever and pain, redness, and hotness on his right knee and leg after suffering a right ankle sprain four (4) days before. *See Fact. Find.* ¶ 4. He was diagnosed with cellulitis and given antibiotics. *See Fact. Find.* ¶ 5. Thereafter, he underwent a second surgery to remove the intramedullary rod and infected nail from the tibia on the right leg and drain an abscess on the right ankle. *See Fact. Find.* ¶ 7.

On November 17, 1995, Plaintiff returned to the VA complaining of fever and redness and warmth of his right leg for two (2) days. *See Fact. Find.* ¶ 9. He was admitted to the orthopedic ward and prescribed antibiotics. *See Fact. Find.* ¶ 10. Thereafter, Roldón underwent a WBC Indium scan that resulted negative for bone infection, and was accordingly discharged. *See Fact. Find.* ¶¶ 11-12.

For the following nine (9) years, namely, from November 1995 through March 2004, Plaintiff presented no issues regarding his rod fixation surgery. As previously discussed, generally, a tort claim within the meaning of the FTCA accrues at the time of the plaintiff's injury. Although there are instances in which the discovery rule applies, inasmuch as the injury itself or who caused it is not readily apparent, this is not the case. While the Court recognizes that Plaintiff may not have known at the time of his rod fixation surgery that there was a potential torts claim, evidently by December 1995, and three (3) separate visits to the VA emergency room later, were sufficient to make him aware that he had suffered some injury related to his surgery. "Because [Plaintiff] knew the circumstances underlying his malpractice claim, he bore 'the responsibility of inquiring among the medical and legal communities about whether [he] was wronged and should take legal action.'" Mello v. United States, 435 F. Supp. 3d 327, 329 (D. Mass. 2020). By the time Roldón filed the *Administrative Claim* before the VA, namely, on August 8, 2018, almost eleven (11) years had elapsed from the expiration of the statute of limitations. *See Fact. Find.* ¶ 24-25.

In sum, the Court finds that Plaintiff had sufficient knowledge that there was a potential connection between his cellulitis and his rod fixation and removal surgeries, as they were proximate to each other.

### B. Post-Complaint MRI's impact on Accrual Date

Moving on. On February 15, 2020, an MRI was performed on Roldón's left knee as part of this case. *See Fact. Find.* ¶ 28. The MRI revealed that Plaintiff had metallic traces in his knee. *See Fact. Find.* ¶ 29.  As such, Plaintiff is now claiming that since he first learned that there were metallic traces in his knee after the February 15, 2020 MRI, the claim did not accrue until said date. *See id.* According to Plaintiff, "[t]he Post-Complaint MRI can toll the accrual date and/or

established[.sic] the date for the continues[.sic] damage doctrine." Docket No. 65, p. 4. In support thereof, Roldón submitted a *Statement Under Penalty of Perjury* attesting that "since April 13, 2012, there are[.sic] medical information [] suggestive of foreign body material in the surgery area. No one ever discussed with me or provided me the results of the X-Ray suggesting that foreign[.sic] material in the surgery area, foreign material that later was confirmed as metallic's[.sic] objects left for the surgeries." Docket No. 64-4, pp. 3-4. In sum, Roldón claims he did not know whether his surgeries were wrongfully performed but he was informed of the relation between the surgeries with the recurrent infections in 2018 and the finding of metallic parts in 2020. *See id.*

In *Opposition*, the United States claims that "[w]hile Plaintiff may have later learned additional details of the potential cause of his cellulites, by November 1995, he knew that he had developed cellulitis in the same leg where he had recently had two surgeries." Docket No. 48, p. 6; *see Fact. Find.* ¶¶ 2-12. Additionally, Roldón "also knew that the first of those two surgeries had already resulted in a previous infection." *See id.* Lastly, the United States relies on applicable case law inasmuch as "definitive knowledge of the cause of injury is not required to trigger the accrual of a medical malpractice claim." Morales-Melecio, 890 F.3d at 369. Importantly, this Court has found that "definitive knowledge that an actual misdiagnosis occurred is not required to trigger the accrual of an FTCA claim. Suren-Millan v. United States, 38 F. Supp. 3d 208, 222 (D.P.R. 2013) (emphasis ours).

Incorporating the discovery rule standards and qualifications, the Court finds that Plaintiff's claim accrued, at the latest, on December 2, 1995, upon discharge from his third visit to the VA related to his rod fixation surgery. *See Fact. Find.* ¶ 12. By that time, the Court deems that Roldón was well aware that he was potentially developing side effects of the rod fixation

surgery. This knowledge is sufficient to meet the discovery rule standard and imposing the burden upon Plaintiff to investigate whether he had a plausible torts action. Accordingly, the 2020 MRI cannot toll the date of accrual of a claim that has been time-barred since December 2, 1997.

### C. Supplemental claims

Plaintiff failed to submit evidence that statute of limitations to file a medical malpractice action pursuant to Puerto Rico law was tolled within the one (1) year period proscribed by statute. As such, the Court finds that the statute of limitations elapsed by December 2, 1996. Therefore, supplemental state law claims pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code are also time-barred, and accordingly, dismissed. *See* P.R. Laws Ann. Tit. § 31, § 5141-42.

The Court stops here. As the Court finds that this case is time-barred, delving into Plaintiff's expert testimony's admissibility is unnecessary. Therefore, a dismissal is warranted in this case.

## V.    CONCLUSION

For the reasons elucidated above, the Court hereby **GRANTS** the United States of America's *Motion for Summary Judgment* (Docket Nos. 47-49). Accordingly, the instant complaint is hereby **DISMISSED WITH PREJUDICE.** Judgment of dismissal is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of February, 2023.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge

14